James Jardine appearing for the appellees. The court has any questions for me regarding anything in the brief or perhaps something that wasn't in the brief. I don't have anything to add. I think the arguments were fleshed out pretty well on our brief, but if the court has any concerns, I'm happy to address anything. I do have a question. Yes, you are. So, I'm confused about the motion in limine that was trying to strike, I think it's Washington's declaration that comes with the handbook. It seems like on opening brief, pages 17 to 18, the plaintiffs argued that that motion in limine was trying to eliminate that evidence and that the court ruled on it incorrectly and I didn't see a response in your brief to that and I don't really understand. I would like to know if you can explain what happened with that and what your understanding of the situation is about that evidence. Your Honor, my understanding is that the motion in limine was directed to that evidence with respect to the pending trial, but that the court did not reach it because summary judgment was granted, so I did not respond to that. I understood that the appellants were arguing that, you know, the declaration contained factual inaccuracies and that the court should not have accepted it as true on its face, but I did not. The judge did rely on it in the summary judgment ruling. Yes, the judge did, Your Honor. So, you say that it was about the trial, but I guess I had understood it to be both because, I mean, it was filed way before the summary judgment. I'm trying to figure out from the docket that there was a lot of things going on because there was more than one summary judgment motion. There were attempts to appeal at the same time. I mean, the trial was way off as far as I can tell, so I had understood this motion in limine to be about the government's evidence in general, maybe for a trial, but also for the summary judgment motion. Are you saying that's not true? That was not my understanding, Your Honor, but if the court has any concerns about, you know, whether the motion in limine should have been granted or not, I'd be happy to address those. And so what would you say about that? Your Honor, that, you know, the standard on summary judgment is that declarations are accepted as being true on their face. We don't question the credibility of them. The appellant, of course, is permitted to introduce contradictory evidence, and as I understand it here, the way that the appellant addressed this in the opening brief was more to argue that the legal structure with respect to, you know, DDS in California and how the structure of the laws is set up, that that, in fact, indicates that it is a state, this is a state-controlled matter and not federal, but that's contrary to my understanding of the applicable authorities because DDS operates with respect to implementing the disability benefits program, and it does so pursuant to federal regulation, which is consistent with how CDI is operated, although there are state actors who are on loan from state or local government agencies. They operate pursuant to federal purview. And is it possible for someone to be acting on behalf of the state and the federal government at the same time? Yes, it is, Your Honor. And why is that not the situation here? Because the only activity that was being pursued was an investigation of whether or not the disability benefits application was accurate or whether there was any basis to suspect malingering, such as that it's an issue of federal benefits. The two DAIs in question, they were not there to enforce state law. They were simply conducting an investigation with respect to eligibility for federal benefits. I thought ER 377 said the state terminated the state benefits as to tie because of this investigation. Well, the benefits, the state does administer the benefits, but it's not with respect to a state right. This is eligibility under the federal. So the state administers the federal benefits, is that correct? I believe that's correct, Your Honor. That's how the scheme is set up. Yes, Your Honor. And there are no separate state benefits? Not that I understood it as being an issue here. This was with respect to the federal benefits application. That's what I understood, Your Honor. We'll look at ER 377 and make sure. If I can grab my record, Your Honor. I want to make sure. So the California Department of Social Services Disability Determination Services Division, you're saying that that is not about anything that's any kind of state benefit? No, Your Honor. No, Your Honor. As I understand, this is administered pursuant to the federal program. And the federal government has just hired the state to administer their benefits. That's my understanding of the scheme, Your Honor. And based upon the authorities that I read, some of the various circuit court decisions that address this particular scheme, they talk about the fact that this is a federal program, that there are state actors. It's an artful term, but I guess they're on loan to the federal government. They operate pursuant to federal control and pursuant to federal policies and procedures. And that's what I understood was happening with respect to the circumstances alleged in the complaint and discussed in the evidence. And did the investigation of Joan begin because of a state agency saying you should look at this guy? Or a man or woman? I believe that DDS performs an evaluation, and they make recommendations which are passed on, I believe, to the special agent in charge of this particular CDI unit. And that agent then reviews those recommendations and then assigns cases to particular CDI teams. In this case, it was Villasenor and Sanchez. And who is Astrid Talese? I believe she is a DDS employee, if I'm not mistaken, Your Honor. So she's a state employee. That's correct. And did they describe her as a legalist? Yes, that's correct, Your Honor. But she signed off on the investigative reports, right? Well, she indicated that it had been submitted and then it was signed off by the agent in charge. Is that Glenn Roberts? Glenn Roberts. Glenn Roberts. Glenn Roberts is the special agent in charge. That's correct, Your Honor. Okay. So then why is Astrid Talese saying submitted? What does that involvement mean, that state? She is taking the investigative report that was prepared by the appellees in this case, the individual appellees, she's reviewing it, and then she's submitting it to the special agent in charge for an evaluation and a determination of whether or not to assign that matter out for investigation. I thought it was the summary of the investigation after it was done. You're saying it's the initiation. No, I'm saying that if we're – I guess it depends upon – there is an initial assessment that's made by the analyst and then it's referred for an investigation and interview, which is what was conducted here. After that, the results of that interview are prepared into the form by the DDS employee, and then they are submitted to the special agent in charge for a determination of whether it's going to be actioned, and if they're going to assign it for any further analysis. That's my understanding of your question. So I'm looking at page ER 376, which says it's a cooperative disability investigation unit, summary report of the investigation. And at the end of that, which that then starts on ER 374, And on ER 376, it says submitted Astrid Talais, approved Glenn Roberts. So we know Astrid Talais is a state employee. Glenn Roberts is a federal employee. And it's a report of the investigation into Ty. And it says on page ER 374, this is an SSI initial claim reconsideration case. So what does this report represent, and what do the signatures represent? This report represents the results of the investigation and their submission to the federal government for an evaluation and a determination of further action. Okay, thank you. And the payment for Sanchez and Villasenor came from the federal government but through the L.A. District Attorney's Office. That's correct. Their salaries were directly paid by the District Attorney's Office, and the District Attorney's Office was reimbursed in full by the federal government, both with respect to salary and then also with respect to any expenses, as I understand, Your Honor. And why did it need to come through? Like, is there a reason it couldn't have been paid by the federal government? I don't quite understand the structure of all of this. I don't understand what the particular considerations were that drove how the program was set up in the memorandum of understanding between the federal government and, in this case, the Los Angeles District Attorney's Office, but these are matters that were negotiated between both of those entities to implement the program. And when you said that someone could be acting on behalf of the state and the federal government, what do you think would have to be different than this for that to be true? I think you would be – I asked myself that question trying to prepare you, Your Honor, and I could foresee a circumstance where, for example, if you had a sworn law enforcement agent within someone's home performing what should be something solely within federal purview, which would be an investigation with respect to eligibility for benefits, and if they undertook a separate law enforcement action in that circumstance to enforce something that would be within their jurisdiction as a state law enforcement officer, I think that would be a very ambiguous situation where we would need to look at, at what point is this a state actor versus a federal actor? I didn't see any elements similar to that in this case, but I do recognize that we're talking about fluid situations, Your Honor. It could be something that, driven by facts, could change. So in the ASPU, the case the government relies on, the ASPU people incurred. There was the agencies involved in two ways. One was they were part of the day, all part of the federal state team, and the other way was they were just called upon by the feds to sort of be backup authority. And I think the court there said neither of them was acting under state law. Is that right? That's correct, and the court used a phrase, the totality of the circumstances that it was considering, and I believe what drove that analysis was that this was a DEA raid, and therefore the reason to be in that location at that time was to enforce federal law with the state agents on loan to the federal government to enforce federal law. And that was helpful to me in evaluating this case because I considered to myself, you know, what is the reason that Villasenor and Sanchez have to be here? Well, they are there to conduct an investigation pursuant to federal law. They were not there to enforce state law or conduct an investigation with respect to state law. Which government entity was paying the DDS analyst? You know, I am not.  I don't know. I apologize if the court would like me to look into that. I would be happy to, but I did not look at that, Your Honor. Okay. I think our questions have been answered. It's always a privilege to appear. Thank you, Your Honor. Thank you. All right. The case of Antietam versus County of Los Angeles is submitted, and we're adjourned for this session. All rise.
judges: IKUTA, FRIEDLAND, Hsu